**UNITED STATES of America, Plaintiff,**

v.

**B.F. GOODRICH COMPANY,**
Defendant.

**Civ. A. No. 82–0143–P.**

United States District Court,
W.D. Kentucky.

April 19, 1984.

Ruthann McQuade, Dept. of Justice, Environmental Enforcement Section of Land and Natural Resources Div., Washington, D.C., James Bycott, U.S. E.P.A., Atlanta, Ga., Richard A. Dennis, Asst. U.S. Atty., Louisville, Ky., for the U.S.

Thomas F. Harrison, Corp. Counsel, B.F. Goodrich Co., Akron, Ohio, Robert Brager, Beveridge & Diamond, Washington, D.C., Stephen Schuster, Ogden, Robertson & Marshall, Louisville, Ky., for the B.F. Goodrich Co.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

This is a civil enforcement action brought by the United States Environmental Protection Agency (EPA) against B.F. Goodrich Company (Goodrich) under Section 112(b)(1)(B), 42 U.S.C. § 7412(b)(1)(B), of the Clean Air Act for violation of applicable federal vinyl chloride relief valve regulations. 40 C.F.R. § 61.65(a). Jurisdiction is asserted over the subject matter of this action pursuant to Section 113 of the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345 and 1355.

EPA has moved for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing the affirmative defenses raised by Goodrich. In its answer, Goodrich asserted that EPA's complaint fails to state a claim upon which relief can be granted; that EPA's enforcement of applicable regulations under the Act is barred by waiver, laches, and equitable estoppel; and that the regulation, section 61.-65(a), is constitutionally void for vagueness. Goodrich has moved for summary judgment in its favor on these same issues and seeks dismissal of this enforcement action. A number of discovery motions are also pending.

Rule 56 of the Federal Rules of Civil Procedure provides for the disposition of civil actions by summary judgment. In ruling on a motion for summary judgment the court must view the evidence in the light most favorable to the party opposing the motion. The court cannot decide a question of fact, but must determine whether a material question of fact exists.

## I. BACKGROUND

The facts may be summarized as follows. EPA alleges that on twenty occasions between 1978 and 1982 Goodrich intermittently discharged quantities of toxic vinyl chloride from relief valves on equipment at its Calvert City, Kentucky, ethylene dichloride/vinyl chloride plant in violation of the vinyl chloride relief valve regulation, 40 C.F.R. § 61.65(a). That regulation provides, in relevant part, as follows:

Except for an emergency relief discharge, there is to be no discharge to the atmosphere from any relief valve on any equipment in vinyl chloride service. An emergency relief discharge means a discharge which could not have been avoided by taking measures to prevent the discharge.

This regulation was promulgated in October 1976.

At issue is the enforceability of the regulation which turns on its characterization as an enforceable "emission standard" or an unenforceable "work practice" standard. The United States Supreme Court, in *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978), held that EPA had no authority to issue work practice standards prior to 1977. *Id.*, 434 U.S. at 283–284, 98 S.Ct. at 572. Therefore, Section 61.65(a) may be enforced by this court only if it is

in fact an emission standard and not a work practice regulation under the false label of an emission standard. An emission standard is one which establishes a quantifiable level of emissions that may be released into the atmosphere by use of techniques, controls, and technology. *Adamo Wrecking Co. v. United States*, 434 U.S. at 286, 98 S.Ct. at 573. A work practice standard, on the other hand, is one which requires the operator of a pollution source to implement design, equipment, or operational changes.

## II. JURISDICTION TO REVIEW THE EMISSION STANDARD—ENFORCEABILITY OF THE STANDARD

The government argues that 40 C.F.R. § 61.65(a) is an enforceable emission standard setting a quantifiable limit of zero emissions but which also allows the violator to assert an affirmative defense of emergency discharge under certain conditions. Goodrich counters that Section 61.65(a), while providing for "no discharge ... from any relief valve," indirectly requires the use of certain work practices. There is persuasive support for both interpretations.

In considering this issue, the court must follow the guidance offered by the United States Supreme Court in *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978). In *Adamo*, the government sought criminal enforcement of the emission standard for asbestos, then codified as 40 C.F.R. § 61.22(d)(2)(i), that specified procedures to be followed during building demolitions under section 112(c) of the Clean Air Act. The district court dismissed the indictment because the asbestos regulation was not an emission standard within the meaning of section 112(c) but was a work practice standard enacted in excess of the EPA's statutory authority. The United States Court of Appeals for the Sixth Circuit reversed the district court ruling that section 307(b), 42 U.S.C. § 7607(b)(1), of the Act precluded the company from questioning whether the regula-

tion was an emission standard. The Supreme Court disagreed, finding that the regulation was a work practice standard, that EPA did not have authority to enact such standards when the regulation was promulgated, and that section 307(b) does not preclude a court from making a threshold determination in a criminal action as to whether "... the regulation which the defendant is alleged to have violated is on its face an 'emission standard' within the broad limits of the congressional meaning of that term." *Adamo Wrecking Co. v. United States*, 434 U.S. at 287, 98 S.Ct. at 573. The Court upheld the district court's dismissal.

In *PPG Industries, Inc. v. Harrison*, 660 F.2d 628 (5th Cir.1981), the United States Court of Appeals for the Fifth Circuit held that EPA did not have authority under section 111 of the Act, 42 U.S.C. § 7411, to adopt work practice standards before 1977. The provisions of section 111 have been held to be analogous to section 112. *PPG Industries, Inc. v. Harrison*, 660 F.2d at 636. Relying in part on *Adamo Wrecking*, the Fifth Circuit held that, while section 307 of the Act bars judicial review of the sufficiency or appropriateness of a regulation, it does not bar the narrow inquiry approved by the Supreme Court in its *Adamo Wrecking* opinion at 434 U.S. at 287, 98 S.Ct. at 573. *PPG Industries, Inc. v. Harrison*, 660 F.2d at 632–633, 636. *But see, Lubrizol Corp. v. Train*, 547 F.2d 310, 316–317 (6th Cir.1976) (opinion indicates that EPA's lack of statutory authority to promulgate regulations under section 111(a) of the Act, 42 U.S.C. § 1857f–6c, now codified as § 7418, cannot be challenged in an enforcement proceeding.) Based on this analysis, the narrow review approved in *Adamo Wrecking*, a criminal proceeding, is equally available in a civil proceeding such as this. *See Hooker Chemical Co. v. United States*, 642 F.2d 48, 53 n. 3 (3d Cir.1981).

The parties point out that the precise issue raised here has been considered by three other federal district courts in unpublished opinions. The United States District

Court for the Middle District of Louisiana, *United States v. Ethyl Corp.*, 576 F.Supp. 80 (M.D.La.1983), *appeal docketed*, No. 83–3537 (5th Cir. August 29, 1983), and the United States District Court for the District of Massachusetts, *United States v. Borden, Inc.*, 572 F.Supp. 684 (D.Mass. 1983), recently addressed the enforceability of the vinyl chloride relief valve regulation reaching opposite conclusions. The court in *Ethyl* held that the vinyl chloride relief valve regulations constitute unenforceable work practice standards rather than emission standards and granted the defendant's motion to dismiss citing *Adamo Wrecking*. In *Borden*, the court distinguished *Adamo Wrecking*, found that Borden's challenge to 40 C.F.R. § 61.65(a) was precluded by section 307(b)(2) of the Act, and denied the defendant's motion to dismiss.

In a third case, *United States v. Conoco, Inc.*, No. 83–1916–E (M.D.Okl. January 23, 1984), the district court said that it is without jurisdiction to review a complaint initiating a challenge to a regulation promulgated pursuant to section 112 of the Clean Air Act. The court held, however, that when a defendant in a civil or a criminal enforcement proceeding initiated by EPA challenges the regulation as an unenforceable work practice standard, a narrow inquiry may be made to ascertain whether the regulation allegedly violated is in fact an "emission standard" within the meaning of the Act in accordance with the guidelines established by the Supreme Court in *Adamo*, 434 U.S. at 287, 98 S.Ct. at 573. The *Conoco* court concluded that the vinyl relief valve regulation, 40 C.F.R. § 61.65(a), is in fact a valid emission standard within the meaning of the Clean Air Act.

The court has carefully reviewed the briefs of counsel and the well reasoned opinions in all three cases and is persuaded that section 307 of the Act does not preclude the narrow review approved by the Supreme Court in *Adamo Wrecking Co. v. United States*, 434 U.S. at 287, 98 S.Ct. at 573, to the defense raised in this case. *See PPG Industries, Inc. v. Harrison*, 660 F.2d at 632–633; *United States v. Conoco*, (M.D.Okl.1984) (unpublished); *United*

*States v. Ethyl Corp.*, 576 F.Supp. 80 (M.D. La.1983). This court further finds, however, that section 61.65(a) is an enforceable vinyl chloride emission standard. *United States v. Conoco*, (M.D.Okl.1984) (unpublished); *United States v. Borden, Inc.*, 572 F.Supp. 684 (D.Mass.1983).

The narrow scope of review is "... whether the regulation which the defendant is alleged to have violated is *on its face* an 'emission standard' *within the broad limits*, of the congressional meaning of that term." *Adamo Wrecking Co. v. United States*, 434 U.S. at 287, 98 S.Ct. at 573 (emphasis added). While the *Adamo* case involved a criminal prosecution, a distinction the Supreme Court stresses throughout its opinion, the court finds its reasoning equally applicable to this civil action.

■ On its face, the vinyl chloride relief valve regulation at 40 C.F.R. § 61.65(a) sets a quantitative limitation on emissions of zero without requiring specific work practices. Since "all discharges are prohibited," the exception for "emergency relief discharges" is an excused deviation from the general rule or standard of zero emissions. *Conoco* slip opinion at 8–10; *Borden* slip opinion at 8. No particular work practices or equipment are required by section 61.65(a). Therefore, the vinyl chloride relief valve regulation is distinguishable from the asbestos regulations considered by the Supreme Court in *Adamo*, which contained no limit on the quantity of emissions and specifically requires the implementation of a "work practice," *i.e.,* the wetting of friable asbestos, regardless of emissions into the atmosphere. Section 61.65(a) constitutes an enforceable emission standard within the broad limits of the Congressional meaning of the term and, accordingly, passes the narrow inquiry permitted by *Adamo Wrecking*. For these reasons, the motion of EPA for partial summary judgment on this issue shall be granted and the motion of Goodrich for summary judgment and dismissal of this action on this issue shall be denied.

### III. WAIVER, EQUITABLE ESTOPPEL, LACHES, AND CONSTITUTIONAL VAGUENESS

In its answer, Goodrich raises the affirmative defenses of waiver, equitable estoppel, laches, and that the vinyl chloride relief valve regulation, 40 C.F.R. § 61.65(a), is constitutionally void for vagueness. The EPA has moved for partial summary judgment on each of these issues. Goodrich has moved for summary judgment and dismissal of this action on these same issues. For the reasons given below the EPA motion shall be granted in part and denied in part and the Goodrich motion shall be denied.

■ Section 61.65(a) was finally promulgated by EPA on October 21, 1976 and was not legally challenged by Goodrich for constitutional vagueness within 30 (now 60) days of its adoption in the United States Court of Appeals for the District of Columbia as required by section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1). 41 *Fed.Reg.* 46560 (1976). Review under section 307(b)(1) encompasses constitutional questions and questions of statutory authority. *South Terminal Corp. v. Environmental Protection Agency*, 504 F.2d 646, 655 (1st Cir.1974). Goodrich's constitutional challenge is barred by the express terms of section 307(b)(2) that administrative action "... with respect to which review could have been obtained under paragrapoh (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement." 42 U.S.C. § 7607(b)(2). *Lloyd A. Fry Roofing Co. v. Environmental Protection Agency*, 554 F.2d 885 (8th Cir.1977).

Goodrich, a commentator to the regulation prior to final promulgation, has allowed more than six years to elapse before raising its constitutional challenge in this enforcement proceeding. This identical argument has been previously rejected. *United States v. Tenneco Chemicals, Inc.*, No. 80-4141 (D.N.J. July 6, 1981) (unpublished; slip opinion at 5–11). The court must defer reviewing such issues where the challenge was not presented to the agency. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 553–554, 98 S.Ct. 1197, 1216–1217, 55 L.Ed.2d 460 (1978).

Goodrich claims that EPA's enforcement of section 61.65(a) is barred by waiver, equitable estoppel, and laches. A factual issue exists on this record as to the applicability of the doctrines of waiver and equitable estoppel; however, the court must reject Goodrich's laches defense.

■ Laches is unavailable to Goodrich for two reasons. First, EPA, as an agency of the United States, is exempt from the consequences of laches. *See United States v. Weintraub*, 613 F.2d 612, 618–619 (6th Cir.1979).

■ Second, assuming laches is an available defense to such an action, Goodrich has not established a proper case for laches on these facts. The United States Court of Appeals for the Sixth Circuit instructs that, in order to prevail, Goodrich must prove:

1. that EPA has prior knowledge of the act complained of;
2. that it did not assert its legal claim diligently; and
3. that Goodrich suffered prejudice as a result.

*Thropp v. Bache-Halsey*, 650 F.2d 817, 822 (6th Cir.1981). Goodrich has failed to demonstrate that EPA did not assert its legal claim diligently. The claimed discharges occurred between 1978 and 1982. It is alleged by EPA that Goodrich was issued a show cause letter for these violations in 1979 and, subsequent to the show cause conference, EPA purportedly issued other letters requesting additional information about reported relief valve discharges. This action was filed August 24, 1982. Such a delay, if any, does not present such egregious conduct by the United States to warrant dismissal of this action because of laches.

■ The gravamen of Goodrich's waiver and equitable estoppel defense is that on December 14, 1981 EPA issued a "Prevention of Significant Deterioration" (PSD) permit pursuant to 42 U.S.C. § 7470–7479

(1977) authorizing construction of certain modifications to its Calvert City plant. The PSD program requires that any major modification of an existing source which will result in a significant increase in emissions in a clean area be subject to preconstruction review and approval by EPA. A "clean area" under the Act, is an area where the Natural Ambient Air Quality Standards have already been attained. The PSD program applies to the Goodrich Calvert City facility.

Because the PSD permit was issued, Goodrich argues that EPA waived past violations of the vinyl chloride emergency relief valve regulation, 40 C.F.R. § 61.65(a). Goodrich makes a persuasive argument that, under the applicable statutory and regulatory provisions, 42 U.S.C. § 7475(a) and 40 C.F.R. § 52.21, the PSD permit constitutes a determination by EPA that the Calvert City plant was in full compliance with all requirements of the Clean Air Act. EPA counters, however, that its PSD review considered only new emission points referenced in the Goodrich permit application and not the existing emissions sources cited in the amended complaint and that EPA made no finding that the existing sources were in compliance with the vinyl chloride standard.

The record fails to demonstrate that EPA made any specific affirmative findings that the entire plant was in compliance with all emission standards and specifically fails to show that EPA found Goodrich in compliance with the vinyl chloride standard sought to be enforced in this action. Consideration of these claims requires the adjudication of fact issues. On this record, the court must defer its ruling until the controverted issues surrounding the issuance of the PSD permit are resolved. *See Chattanooga Mailers Union, Local 92 v. Chattanooga News-Free Press Co.*, 524 F.2d 1305, 1311–1313 (6th Cir.1975).

The court shall grant the EPA motion for partial summary judgment regarding Goodrich's affirmative defense alleging laches; deny the EPA motion for partial summary judgment regarding Goodrich's affirmative

defenses of equitable estoppel and waiver; and the court shall deny the motion of Goodrich for summary judgment in its favor and dismissal of this action on all three issues.

## IV. PRETRIAL DISCOVERY ISSUES

■ The government seeks a protective order to prevent Goodrich from inquiring into matters regarding the interpretation, validity, or enforceability of the vinyl chloride relief valve regulation, 40 C.F.R. § 61.65(a), and deposing certain senior EPA executives. Goodrich moves to compel such testimony and production of EPA documents.

The motion of Goodrich to compel was granted by order entered February 29, 1984. To that extent, the EPA motion for a protective order has been denied. As to the remainder of the EPA motion, it is now largely moot since Goodrich sought this discovery under the theory that the vinyl chloride relief valve regulation is a work practice standard rather than an emission standard within the context of the Clean Air Act. Since the court holds today that the regulation is an enforceable emission standard the scope of Goodrich's inquiry should be considerably narrowed. Goodrich, however, may discover relevant regulatory history to the extent it is not supplied by the administrative record if the requisite foundation is made. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825–826, 28 L.Ed.2d 136 (1971). Accordingly, the motion of the government for a protective order pursuant to Federal Rule of Civil Procedure 26(c) and 30(d) shall be denied and the matter may be reconsidered at the next pretrial conference to be scheduled in this action.

On April 15, 1984 EPA moved, pursuant to Federal Rule of Civil Procedure 34, for permission to enter and inspect the Goodrich Calvert City plant. This latter motion shall be denied pursuant to local rule 10(d), Rules of the United States District Court for the Western District of Kentucky and the parties shall agree on appropriate

terms and conditions for such an inspection.

An appropriate order is entered today.